WARNER ET AL., APPELLEES, *v.* WASTE MANAGEMENT,
INC. ET AL., APPELLANTS.

[Cite as Warner *v.* Waste Management, Inc. (1988), 36 Ohio St. 3d 91.]

(Nos. 87-549 and 87-581—Decided April 20, 1988.)

*Murray & Murray Co., L.P.A., Dennis E. Murray* and *Kirk J. Delli Bovi,* for appellees.

*Smith & Schnacke, John W. Edwards* and *John T. Sunderland,* for appellant Waste Management, Inc. in case No. 87-549.

*Chester, Hoffman & Willcox, Charles R. Saxbe* and *John E. Breen,* for appellants Ronald Shawl and Donald Eckhardt in case No. 87-581.

*Wargo, Wargo & Walters Co., L.P.A.,* and *Frank J. Groh-Wargo,* for appellant Janet Artino in case No. 87-581.

*Akin, Gump, Strauss, Hauer & Feld* and *Peggy M. Tobolowsky,* for appellant Peter Miller in case No. 87-581.

WRIGHT, J. The primary issue in this case is whether the court of appeals erred in affirming the trial judge's certification of a class action pursuant to Civ. R. 23. We hold the appellate court was correct in finding a class action was appropriate. The court of appeals, however, erred in its analysis of the Rule 23 requisites. It is evident that the action is maintainable under Rule 23(B)(2) and (B)(3), but not (B)(1). The appellate court further erred by failing to recognize that the trial court abused its discretion by certifying a class which was, in part, unidentifiable. Therefore, we remand the action with instructions to modify the class consistent with this opinion. Finally, we offer additional guidance to the trial court so that on remand the court may avoid creating an unmanageable case.

I

The certification issue is raised by motion. Typically, there is a hearing, accompanied by extensive documentation, depositions, admissions, interrogatories, affidavits, and oral testimony. It is from this hearing that the court must find, by a preponderance of the evidence, that all the Rule 23 requirements are met.

A trial judge must make seven affirmative findings before a case may be certified as a class action. Two prerequisites are implicitly required by Civ. R. 23, while five others are specifically set forth therein.

In our view, the most serious error in the appellate court's opinion is in its analysis of the Rule 23(B) requirements. We thus begin our analysis with that section and will subsequently analyze Rule 23(A).

A trial court judge must find that one of the three Civ. R. 23(B) requirements is met before a class may be certified. Plaintiffs here claimed they qualified under Civ. R. 23(B)(1), (B)(2) and (B)(3). The trial judge found

all three of the requirements were, in fact, met. The court of appeals, however, indicated that Civ. R. 23(B)(1)(a) was satisfied, but was silent on whether the plaintiffs qualified under the other subsections.

Civ. R. 23(B)(1)(a) will permit class certification if separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class. Subsection (B)(1)(b) will permit certification if separate actions would create a risk of adjudications that would as a practical matter be dispositive of the claims of non-parties or substantially impair or impede their ability to protect their interests.

Subsection (B)(1)(a) does not lend itself to mass tort claims, such as the one before us. Pursuant to this subsection, certification is permissible if separate actions could lead to incompatible standards of *conduct*.[2] The case at bar does not appear to involve a case which could result in differing standards of conduct if separate actions were pursued. Although it is possible that some plaintiffs could recover damages and others would not, such a situation is covered by subsection (B)(3) rather than (B)(1).

Subsection (B)(1)(b) is equally inapplicable. Professor Arthur R. Miller likens this subsection to interpleader suits where only a limited amount of money is available and there is a risk that separate actions would deplete the fund before all deserving parties could make a claim.[3] A mass tort action is thus inappropriate for this subsection. It is evident that the appellate court was incorrect in affirming this action under subsection (B)(1). For the reasons indicated below, however, we find the class action or actions may be certified under subsections (B)(2) and (B)(3).

Civ. R. 23(B)(2) has, as its primary application, a suit seeking injunctive relief. By way of example, this would include the typical claim under Title VII of the Civil Rights Act of 1964, as amended, Section 2000e *et seq.*, Title 42, U.S. Code. A cause of action premised upon nuisance, such as the case before us, would also be appropriate. It is important to note, however, that a clear minority in the case before us is actually seeking to have the waste dump site declared a nuisance. It is also questionable who, if anyone, is seeking injunctive relief to prevent future property damage and personal injury. The majority of the class is seeking damages for a potpourri of other claims. To avoid creating a serious manageability problem, on remand the trial court should consider the creation of separate classes or subclasses.

The Rule 23(B)(3) action is the so-

---

[2] This subsection applies, for example, to situations where a class may challenge the validity of a lease, the constitutionality of a term within a municipal bond or a voting rights statute. In the first example, if separate actions were pursued, a lease could be found valid in one action but invalid in another. This would lead to incompatible standards of conduct for the defendant. In the second example, the terms in the bond could be found valid and enforceable for some people but unenforceable for others in separate lawsuits, thereby resulting in incompatible standards of conduct. The same could easily occur if separate actions in a voting registration dispute resulted in different verdicts. The rationale of the rule, therefore, is to avoid creating judgments calling for incompatible standards of conduct.

[3] Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed. 1977), at 45 (hereinafter "Miller").

called "damage" action. Rule 23(B)(3) requires two findings by the court: that the common questions predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Professor Miller states, "[t]he key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims."[4]

While there appears to be some evidence of a common question of liability, we are uncertain whether this evidence leads to the conclusion that there is a common nucleus of operative facts pointing toward the liability of the sundry defendants. However, we shall allow the trial court's decision to stand in light of the conditional nature of its order.

## II

We now address the six remaining affirmative findings that must be made before certification may be proper. We note that Rule 23 requires, albeit implicitly, that an identifiable class must exist before certification is permissible.[5] The definition of the class must be unambiguous. Classes such as "all people active in the peace movement," "all people who have been or may be harassed by the police" and "all poor people," are too amorphous to permit identification within a reasonable effort and thus may not be certified.

In the case before us, the trial judge certified a class consisting of those people who have "lived, worked, resided, or owned real property within a five-mile radius of the Waste Management * * * site." In their second amended complaint, however, the plaintiffs sought to represent only those citizens "who lived or owned real property within a five (5) mile radius of the * * * site." As stated, the judge *sua sponte* enlarged the class to include all people who worked within five miles of the site.

We think it is clear that a class consisting of all people who have ever worked within five miles of a specific site is unidentifiable. Such a class would include all transients who have, for one reason or another, "worked" within the defined zone. In this respect, the class certified is not readily identifiable. We hold that the trial court abused its discretion by *sua sponte* including within the class all people who have ever worked within five miles of the facility. Therefore, this action must proceed in a modified form. That part of the appellate court's decision that is inconsistent with this holding is reversed.

The second implied prerequisite is that the class representatives must be members of the class.[6] A case illustrating this prerequisite is *Air Line Stewards & Stewardesses Assn., Local 550* v. *American Airlines, Inc.* (C.A. 7, 1973), 490 F. 2d 636, involving a challenge to an airline's no-pregnancy rule of stewardesses. The representatives consisted of the union and several stewardesses. The court held that the union was not a member of the class affected by the rule and therefore could not participate in the action.

The record in the case before us indicates the trial court had a reasonable basis to conclude the representatives

---

[4] Miller, *supra,* at 49.

[5] See 7A Wright, Miller & Kane, Federal Practice & Procedure (1986), Section 1760 (hereinafter "Wright & Miller").

[6] See Wright & Miller, *supra,* at Section 1761.

seeking damages and the representatives asking to have the site declared a nuisance were, indeed, members of a defined class. The record, however, is devoid of any evidence indicating the representatives are members of the class seeking injunctive relief with respect to waste leakage to prevent future personal injury and property damages. In fact, appellees do not dispute it is uncertain who, if anyone, is within this class. Although we recognize the trial judge's ruling was conditional, we hold the trial court, on remand, must determine whether the representatives have an action for such injunctive relief before such claims may be pursued. The appellate court's decision is modified to the extent it is inconsistent with our holding as noted above.

### III

We now turn to the four express prerequisites in Civ. R. 23(A), set forth below:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In construing Civ. R. 23(A)(1), known as the numerosity requirement, courts have not specified numerical limits for the size of a class action. This determination must be made on a case-by-case basis. Professor Miller, however, has indicated: "[i]f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule * * *."[7]

In this action, there are more than five hundred possible class members. The trial court, on remand, may deem this element satisfied.

Courts generally have given a permissive application to the commonality requirement in Civ. R. 23(A)(2). See *Marks* v. *C. P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 31 OBR 398, 509 N.E. 2d 1249. This prerequisite has been construed to require a " 'common nucleus of operative facts.' " *Marks, supra,* at 202, 31 OBR at 400, 509 N.E. 2d at 1253. Professor Miller indicates:

"If there is a common liability issue, [Fed. R. Civ. P.] 23(a)(2) is satisfied. Similarly if there is a common fact question relating to negligence, or the existence of a contract or its breach, or a practice of discrimination, or misrepresentation, or conspiracy, or pollution, or the existence of a particular course of conduct, the Rule is satisfied. Typically, the subdivision (a)(2) requirement is met without difficulty for the parties and very little time need be expended on it by the * * * judge."[8]

While we recognize the trial court's order was conditional, we entertain grave concern toward the potpourri of claims that could produce problems of manageability. As stated, we have like concern over the predomination test. On remand, we hold the trial court should strongly consider bifurcation as to the actions on liability, to be followed by individual actions on damages. We must keep in mind that the policy behind a class action lawsuit is to *simplify* the resolution of complex litigation, not complicate it.

Under Civ. R. 23(A)(3), the claims

---

[7] Miller, *supra,* at 22.

[8] Miller, *supra,* at 24.

or defenses of the representative parties must be typical of the claims or defenses of the class. The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class. The trial judge found no express conflict between the representatives and the class and we do not find any evidence in the record to contradict this finding. Therefore, on remand, this requirement should be deemed satisfied.

The representative parties must "fairly and adequately protect the interests of the class" according to Rule 23(A)(4). The analysis under this requirement is divided into a consideration of the adequacy of the representatives and the adequacy of counsel.

A representative is deemed adequate so long as his interest is not antagonistic to that of other class members. *Marks, supra,* at 203, 31 OBR at 400, 509 N.E. 2d at 1253. No evidence in the record is indicative of any conflict between the representatives and the class.

The issue of whether counsel is competent to handle the action can be the most difficult in the Rule 23 analysis. The fact that an attorney has been admitted to practice does not end the judicial inquiry. An attorney should be experienced in handling litigation of the type involved in the case before class certification is allowed. Close scrutiny should be given to the attorney's qualifications to handle the matter with which he is entrusted. For example, a gifted intellectual property lawyer might not be qualified to handle an environmental case. It also follows that a personal injury attorney probably should not be entrusted with a complex antitrust case under the Valentine Act. Since crucial questions of due process are involved, the trial court should exercise great care in its determination of this element. Although this task may be most unpleasant, it is one of the most vital.

Based upon past environmental class action litigation in which counsel were involved, the trial court specifically found counsel were "qualified, experienced and able" to conduct this action. We find nothing to contradict this finding.

## IV

A peripheral issue in this case is whether the trial court's failure to give the individual defendants-appellants notice of an opportunity to attend and present evidence at the second class certification hearing constitutes a denial of due process.

A party to a class action is, of course, entitled to notice of all hearings that may affect the litigation in which the party is involved. Accordingly, when an evidentiary hearing is required on class certification, courts have ruled that all parties must be informed so that they may have the opportunity to present facts on which they intend to rely. See *Walker* v. *World Tire Corp.* (C.A. 8, 1977), 563 F. 2d 918, 921 ("[W]here * * * the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue."); *Jones* v. *Diamond* (C.A. 5, 1975), 519 F. 2d 1090, 1099. In the case at bar, this right was denied. We hold that where a named defendant is denied notice of a class certification hearing, subsequent certification of the class is not effective against that defendant until a proper hearing is provided for that defendant.[9] The ap-

---

[9] We recognize a trial court is not required to hold an evidentiary hearing for all such cases. *Frank* v. *Kroger Co.* (C.A. 6, 1981), 649 F. 2d 1216, 1223-1224. It is rare,

pellate court did not address this issue. The trial court erred as a matter of law and thereby abused its discretion by not providing notice to the individual defendants-appellants. That part of the appellate court's opinion which does not conform to this ruling is reversed.

## V

In summary, it is our view that the court of appeals' judgment was, in part, correct. Its analysis, however, is plainly erroneous. The court failed to recognize that the originally defined class action was not maintainable under Civ. R. 23(B)(1), included an unidentifiable group of people, and was totally unmanageable. Moreover, the appellate court failed to even address the due process claim of the individual defendants. It is evident, however,

that, for the most part, the trial court did not abuse its discretion.[10]

On remand, we direct the trial court to modify the scope of the class, consider the creation of subclasses in this action, bifurcate trials on liability issues, and exclude the individual defendants-appellants from this action until they are given a proper certification hearing.

*Judgment affirmed in part,*
*reversed in part, modified*
*and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, WILSON and H. BROWN, JJ., concur.

HOLMES, J., dissents.

WILSON, J., of the Second Appellate District, sitting for DOUGLAS, J.

---

however, that the pleadings in a class certification action will be so clear that a trial judge may find, by a preponderance of the evidence, that certification is or is not proper. When such an instance arises, it is clear that parties do not have the right to submit evidence. However, where the court, as in this case, determines a hearing is necessary, all parties must have the opportunity to be heard. We cannot assume that parties who attend a hearing will have the opportunity and motive to defend absent parties.

[10] The standard for review in a class certification appeal is well-established. We recently held "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks* v. *C. P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 31 OBR 398, 509 N.E. 2d 1249, at the

syllabus. In *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 12 OBR 313, 466 N.E. 2d 875, we said: "[t]he standard for 'abuse of discretion' is readily defined, albeit broadly, as more than an error of law or judgment, but implies an attitude on the part of a trial court that is unreasonable, arbitrary or unconscionable. * * * A single analytical error by the trial court, in an otherwise correct analysis, might not necessarily constitute a sufficient basis to overturn the decision of the court under established tests for abuse of discretion." *Id.* at 232-233, 12 OBR at 315, 466 N.E. 2d at 877. Accordingly, *Ojalvo* holds that a mere analytical error does not constitute an abuse of discretion. However, where the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion. This determination must be made on a case-by-case basis.